UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

**Helen Knepka,**

**Plaintiff,**

**-v-**                                                              **6:11-CV-196 (NAM/DEP)**

**Emory Medical Laboratories, Inc., Robert J. Morris, M.D.,
Emory University Hospital, and  Emory Healthcare, Inc.,**

**Defendants.**

••••••••••••••••••••••••••••••••••••••••••••••••••••••••

APPEARANCES:

DeFrancisco & Falgiatano Law Firm
Charles L. Falgiatano, Esq., of counsel
121 East Water Street
Syracuse, New York 13202
Attorney for Plaintiff

Duke, Holzman, Photiadis & Gresens LLP
Charles C. Ritter , Jr., Esq., of counsel
350 Main Street
Suite 1800
Buffalo, New York  14202
Attorney for Defendants

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

In this medical malpractice action, defendants, residents of the State of Georgia, move

(Dkt. No. 7) to dismiss for lack of personal jurisdiction, improper venue, and failure to state a

claim under Georgia State law.  Fed. R. Civ. P. 12(b)(2), (3), and (6).  Plaintiff contends that it

has  jurisdiction over defendants under New York State's "long-arm" statute, that venue in the

Northern District of New York is proper, and that Georgia State law does not apply.  As set forth

below, the Court finds on this pre-discovery motion that plaintiff has made a sufficient *prima*

*facie* showing of jurisdiction. The parties may move to resolve the jurisdictional issue after

jurisdictional discovery; otherwise the Court will decide the issue at trial. Assuming that this

Court has jurisdiction, venue is proper here, and New York law applies. The motion is denied.

### FACTS

The complaint states that plaintiff is a resident of the State of New York; that Robert J.

Morris, M.D. is authorized to practice medicine in the State of Georgia; that he was an employee,

agent, apparent agent, independent contractor and/or staff member of defendant Emory Medical

Laboratories, Inc. ("Laboratories"), which is owned by defendant Emory University Hospital

("Hospital"), which is owned and/or operated by defendant Emory Healthcare, Inc.

("Healthcare") (collectively "Emory defendants"); and that the Emory defendants are licensed by

or incorporated in and doing business in the State of Georgia. The complaint alleges:

> 26. On October 22, 2008, Plaintiff presented to Dr. Edward Lee at Slocum Dickson Medical Center in New Hartford, New York, in for electrofulguration and currettage of a 2.2 cm basal cell carcinoma on her right cheek.

> 27. Upon information and belief, the specimen was received by Defendant Laboratories on or about October 24, 2008 for microscopic examination and diagnosis.

> 28. As a result of the microscopic examination and diagnosis, Defendant Morris diagnosed Plaintiff's right cheek specimen as basal cell carcinoma, however failed to document the type of basal cell carcimona and further failed to discuss whether the margins were negative or positive for cancer.

> 29. No further follow up or treatment was indicated in Defendant Morris' surgical pathology report.

> 30. On or about February 4, 2009, Plaintiff returned to Dr. Lee and was again treated with liquid nitrogen to her right cheek.

> 31. At that time, Dr. Lee noted that the previously removed specimens were

in fact basal cell carcinoma and he also noted pyoderma, for which he prescribed Keflex.

32. Plaintiff returned to Dr. Lee on March 2, 2009 and noted improvement however, prescribed Bactroban in addition to the previously prescribed Keflex.

33. On March 30, 2009 Plaintiff returned to Dr. Lee who noted the area where the spots were removed had not healed and that there was a possible reoccurrence of the basal cell carcinoma.

34. On or about April 7, 2009, Plaintiff presented to Dr. Bruce Shafiroff because the wound from the initial procedure performed by Dr. Lee remained unhealed.

35. During the April 7, 2009 visit Dr. Shafiroff noted "there were problems with infection, question of recurrence and recauterization".

36. On or about April 30, 2009 Dr. Shafiroff performed an excision of basal cell carcinoma from Plaintiff, which required 3 frozen sections for margin control and application of 50 square centimeter full thickness skin graft from her right upper chest to the right side of her face.

37. Upon information and belief, Defendants Laboratories, Morris, Hospital and Healthcare and/or their employees, agents, apparent agents, independent contractors, and/or staff members were careless and negligent and committed acts and/or omissions and/or deviated and/or departed from acceptable customs, standards and practices with regard to the manner in which care and treatment was provided to Plaintiff including, but is not limited to: carelessly and negligently hiring employees, agents, apparent agents, independent contractors and/or staff members; carelessly and negligently supervising and/or controlling their employees, agents, apparent agents, independent contractors, and/or staff members; failing to properly perform a microscopic examination; failing to recommend additional diagnostic testing; failing to recommend follow up; failing to state the type of basal cell carcinoma in the October 24, 2008 surgical pathology report; failing to appreciate cancer in the margins; failing to document findings regarding the specimen margins; and, in general, failing to provide the appropriate medical care and treatment in accordance with generally accepted standards of Defendants' profession.

The complaint asserts federal diversity jurisdiction on the ground that the matter in controversy exceeds $75,000 and is between citizens of different States. 28 U.S.C. § 1332(a)(1).

In support of the dismissal motion, defendants rely on two affidavits.  The first, from Dr.

Morris, states:

> 3. That he resides ... [in the State of] Georgia ... where he has resided continuously since 1997.
>
> 4. That he is an employee of Emory University d/b/a Emory University Hospital, not Emory Medical Laboratories, Inc. or Emory Healthcare, Inc.
>
> 5. That he has never practiced medicine within the State of New York.
>
> 6. That he has never traveled to the State of New York for any purpose other than personal vacation.
>
> 7. That he has never solicited, transacted, or done business in the State of New York.
>
> 8. That he has not contracted to supply goods or services in the State of New York.
>
> 9. That he does not derive substantial revenue from interstate commerce involving the State of New York.
>
> 10. That his analysis of the Plaintiffs tissue sample on October 24, 2008, was conducted entirely within the State of Georgia.
>
> 11. That prior to reading Plaintiffs Complaint, he had no knowledge whatsoever as to the State in which Plaintiff resided.
>
> 12. That he has never met the Plaintiff.

The other affidavit submitted by defendants, from John Fox, states:

> 3. That he is President and CEO, Emory Healthcare Executive Vice President.
>
> 4. That Emory Medical Laboratories, Inc., Emory University d/b/a Emory University Hospital, and Emory Healthcare, Inc. (hereinafter "Emory Defendants") are all Georgia corporations / entities.
>
> 5. That the Emory Defendants all have their principal place of business in Georgia.
>
> 6. That the Emory Defendants do not maintain offices or other places of

business in New York.

7. That the Emory Defendants do not have New York mailing addresses or phone numbers.

8. That the Emory Defendants do not solicit business in New York.

9. That the Emory Defendants do not have any agents or employees in New York.

10. That the Emory Defendants do not own, possess or lease any real estate in New York.

## JURISDICTION

Defendants first contend they are entitled to dismissal on the ground of lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When opposing a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *See DiStefano v. Carozzi N. Am., Inc*., 286 F.3d 81, 84 (2d Cir. 2001). Where, as here, such a motion is made prior to discovery, a plaintiff need only make a *prima facie* showing of personal jurisdiction. *See id.*

Personal jurisdiction in a diversity action is determined by the law of the forum in which the federal court sits. *See id*. Plaintiff contends that defendants are subject to the jurisdiction of this Court under New York State's "long-arm" statute, C.P.L.R. 302, "Personal jurisdiction by acts of non-domiciliaries," which reads in pertinent part:

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
***
3. commits a tortious act without the state causing injury to person or property within the state... if he

-5-

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

If jurisdiction is appropriate under C.P.L.R. 302, the Court must then consider whether the exercise of jurisdiction comports with due process.  *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

The Court first considers "transaction of business" jurisdiction under section 302(a)(1). New York courts construe section 302(a)(1) to be a "single act statute" such that "transaction of business" jurisdiction may be invoked based on "proof of one transaction in New York..., even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988).  Thus, a defendant need not be physically present in New York to transact business here under section 302(a)(1), as long as it engages in "purposeful activities" through which it "avails itself of the privilege of conducting activities within the ... State, thus invoking the benefits and protections of its laws." *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007) (citations and internal quotation marks omitted). There is no requirement that the activity be commercial in nature.  *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 247, n.10 (2d Cir. 2007).

In *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010), the Second Circuit discussed the "purposeful activity" aspect of "transaction of business" jurisdiction in the context of the shipment of a single counterfeit handbag into New York.  The *Chloé* court

noted that district courts in this circuit have concluded that the "single act" of selling counterfeit goods into New York is a purposeful act in satisfaction of 302(a)(1), *citing Baron Philippe de Rothschild, S.A. v. Paramount Distillers, Inc.*, 923 F.Supp. 433, 436 (S.D.N.Y.1996), *and Mattel, Inc. v. Adventure Apparel*, 2001 WL 286728 (S.D.N.Y. Mar. 22, 2001), and observed: "Under this reasoning, [defendant's] single act of shipping a counterfeit Chloé bag might well be sufficient, by itself, to subject him to the jurisdiction of a New York court under section 302(a)(1)." *Chloé*, 616 F.3d at 170. The *Chloé* court did not decide this question, because it found additional evidence of purposeful activity in the operation of a website offering the bags for sale to New York consumers and the shipment of merchandise into New York on 52 other occasions. *Id*.

In the case at bar, the complaint alleges that defendants received plaintiff's tissue sample sent from New York by Dr. Lee, a New York physician, for analysis. Defendants analyzed the sample and sent a pathology report back to Dr. Lee in New York, presumably receiving some compensation. Defendants may reasonably be charged with the knowledge that Dr. Lee would rely on the report in rendering treatment to a patient in New York. Defendant's conduct in directly providing this service to a New York physician may well constitute a purposeful activity in New York sufficient to support "transaction of business" jurisdiction under section 302(a)(1).[1] Factors bearing on the issue include – but are not limited to – how frequently defendants perform

---

[1]

Dr. Morris' statement that "prior to reading Plaintiffs Complaint, he had no knowledge whatsoever as to the State in which Plaintiff resided" does not necessarily mean that defendants did not engage in deliberate contacts with New York State. Rather, it may simply mean that defendants provided laboratory services to physicians in other states as well as New York.

-7-

services for Dr. Lee, other New York physicians, and other physicians outside of Georgia[2]; what

proportion of defendants' business is engaged in performing such services; the manner in which

defendants offer their services; and the exact nature of the defendants' arrangements with Dr. Lee

and other physicians.[3]  These factors are not within plaintiff's knowledge, and plaintiff will need

discovery.  The same factors will likely bear on the question of whether the assertion of long-arm

jurisdiction over defendants comports with due process.[4]

        Defendants may also be subject to section 302(a)(1) jurisdiction on the ground that

defendants "contract[ed] to supply goods or services" in New York.  This clause "provides for

jurisdiction where the defendant has only 'minimal contacts' with New York but contracts to

deliver goods or services to the state."  *Chloé*, 616 F.3d at 170; *accord Island Wholesale Wood

Supplies, Inc. v. Blanchard Indus., Inc.*, 476 N.Y.S.2d 192, 194 (2d Dep't 1984) (noting that

section 302(a)(1) "deems the shipment of goods into the State or the performance of services in

---

[2]

The Second Circuit has indicated that in some circumstances, a finding of purposeful activity in New York may be based on evidence that, through national or regional activities, defendants served or attempted to serve, directly or indirectly, the market for its services in New York.  *See generally Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 243 (2d Cir. 1999).

[3]

There is no record support for plaintiff's counsel's statement in his "Declaration in Opposition" to defendants' dismissal motion that "Dr. Lee had an established working relationship with Defendant Laboratories and regularly utilized it for surgical pathology services."  Counsel cites to page 41 of the transcript of Dr. Lee's deposition testimony in *Knepka v. Lee* (Index No. CA2010-002031), plaintiff's action against Dr. Lee in New York State Supreme Court.  Neither page 41 nor any other page in the transcript supports counsel's assertion.  The only evidence concerning Dr. Lee's relationship with defendants is his answer "Yes" to the question whether he "had used Emory Medical Laboratories for surgical pathology slides in the past." (Transcript, deposition of Edward B. Lee, M.D., December 9, 2010, p. 41.)

[4]

As the Second Circuit has observed, the "'purposeful availment' language defining 'transacting business' has been adopted by the New York Court of Appeals from Supreme Court cases analyzing the constitutional limitations on a state's power to assert personal jurisdiction over a non-domiciliary defendant."  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 247 (2d Cir. 2007) (brackets omitted).

-8-

the State to be an act by which a nondomiciliary avails itself of the privilege of conducting

activities in the State.").  In the case at bar, there may well be an arrangement for compensation to

defendants that would constitute a contract to deliver laboratory analysis services within New

York State sufficient to satisfy section 302(a)(1).  Again, plaintiff will need discovery on the

issue.  Likewise, through discovery, plaintiffs may be able to prove that jurisdiction exists under

section 302(a)(3)(i) and (ii).

   The Court notes that a New York intermediate appellate court has upheld section

302(a)(1) jurisdiction in a strikingly similar case.  In *Pomerantz v. Wolfin*, 653 N.Y.S.2d 37 (2d

Dep't 1997), the Second Department wrote:

> The appellants in the regular course of business perform services in an Ohio
> laboratory, in which, among other things, they analyze biopsies "from
> particular geographic regions of the country". The plaintiff Cathy Pomerantz,
> a New York resident, was treated by the defendant Nancy Sue Wolfin, a Long
> Island dermatologist, for skin lesions. Dr. Wolfin sent excised skin tissues of
> Mrs. Pomerantz to the laboratory in Ohio for analysis. The appellants
> analyzed those biopsies, and sent reports of their findings back to the New York
> doctor. Under these circumstances, the appellants are subject to in personam
> jurisdiction in New York (*see*, CPLR 302[a][1]; see also, CPLR 302[a][3][ii]
> ).

*Id.* at 38 (case citations omitted).  The memorandum decision contains no additional facts;

however, presumably the Second Department's statement that "in the regular course of business"

appellants analyze biopsies "from particular geographic regions of the country" is based on

evidence of purposeful activity in New York.  If such evidence exists in the instant case,

*Pomerantz* supports the assertion of 302(a)(1) and (3) jurisdiction over defendants.

   On this motion, defendants' conclusory affidavits fail to demonstrate that they are not

subject to section 302(a)(1) or (3) jurisdiction.  Nor do they explain Dr. Morris' connection with

the Emory defendants so as to enable the Court to assess whether the Emory defendants' activities

in New York may be imputed to him for jurisdictional purposes, *see, e.g., Chloé*, 616 F.3d at 168;

for this reason, the Court does not distinguish among the defendants at this stage of the action.

Further, at this point, there is no basis to conclude as a matter of law that assertion of long-arm

jurisdiction over defendants would offend due process.

In support of their motion, defendants rely on *Ingraham v. Carroll*, 90 N.Y.2d 592 (1997).

In *Ingraham*, New York's high court refused to uphold long-arm jurisdiction over Dr. Loy, a

Vermont physician, in a medical malpractice action stemming from treatment rendered in

Vermont to plaintiff's decedent, a New York resident.  Decedent had traveled to Vermont on a

number of occasions for consultations with Dr. Loy upon referral by her New York physicians.

The *Ingraham* decision focused on C.P.L.R. 302(a)(3), rejecting jurisdiction because Dr. Loy,

who rendered medical services wholly within Vermont, did not do or solicit business in New

York or derive substantial revenue from services rendered in New York as required by

302(a)(3)(i), nor did he engage in interstate commerce under 302(a)(3)(ii).  *Id*. at 596-600.  The

*Ingraham* court added in a footnote that there was no evidence supporting section 302(a)(1)

jurisdiction because there was no showing that Dr. Loy transacted business in New York or had a

contract to provide services in New York.  *Id.* at 596, n.1.  Clearly, *Ingraham* is inapposite; in that

case, all treatment rendered to decedent by Dr. Loy occurred in Vermont, whereas in the instant

case, plaintiff never left New York, and defendants received the sample from and sent their report

into New York.

Plaintiff has made a sufficient *prima facie* showing of *in personam* jurisdiction over

defendants.  The parties may engage in jurisdictional discovery for 60 days from the date of this

Memorandum-Decision and Order.  The Court will accept a motion by plaintiff to dismiss the

-10-

affirmative defense of lack of personal jurisdiction and/or a motion by defendants to dismiss the action for lack of jurisdiction, provided that the motion is made within 90 days from the date of this Memorandum-Decision and Order.  Any such motion shall be supported by evidentiary proof in admissible form from people with first-hand knowledge.  Plaintiff will bear the burden of establishing personal jurisdiction over defendants by a preponderance of the evidence.  Upon reviewing such motions, the Court will either render a decision on the papers or, if warranted, conduct an evidentiary hearing limited to the question of *in personam* jurisdiction.  If no motion is made, the Court will make a final determination on the jurisdictional issue at trial.

## VENUE

Defendants also contend that the case must be dismissed or transferred on the ground of improper venue under 28 U.S.C. § 1391(a), which provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Because the application of section 1391(a)(1) authorizes venue in Georgia, venue in the Northern District of New York would be proper only under section 1391(a)(2).  Thus, the issue is whether "a substantial part of the events or omissions giving rise to the claim occurred" in the Northern District of New York.

Section 1391(a)(2) contemplates that venue may be proper in more than one judicial district as long as a substantial part of the underlying events took place in each district.  *See Bates*

-11-

*v. C & S Adjusters, Inc.*, 980 F.2d 865 (2d Cir. 1992); *see also Daniel v. American Bd. of Emergency Medicine*, 428 F.3d 408, 432 (2d Cir. 2005) (construing identical language in section 1391(b)(2)). When a plaintiff relies on the "substantial part" language, the court should conduct a two-part inquiry: first, it should "identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims"; and second, it should determine whether "significant events or omissions material to those claims have occurred in the district in question." *Daniel*, 428 F.3d at 432 (citation and internal alterations omitted).

In the case at bar, plaintiff's claim is that defendants negligently analyzed the specimen received from Dr. Lee and sent Dr. Lee an incorrect or incomplete pathology report, upon which Dr. Lee relied in continuing treatment, resulting in the worsening of plaintiff's condition necessitating additional and more invasive treatment. Significant events material to this claim occurred in the Northern District of New York, specifically, Dr. Lee took the specimen from plaintiff in New York and sent it to defendants from New York; defendants remitted the pathology report to Dr. Lee in New York; Dr. Lee received the report and relied upon it to treat plaintiff in New York; and plaintiff allegedly suffered resultant harm in New York. A substantial part of the events underlying plaintiff's claim took place in this district.

This conclusion is supported by the Second Circuit's reasoning in addressing section 1391(a)(2) venue in Fair Debt Collection Practices Act case. *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865 (2d Cir. 1992). In *Bates*, a debtor residing in the Western District of New York sued a debt collector located in Pennsylvania. The debtor based his claim on the contents of a collection notice mailed by the debt collector in Pennsylvania to the debtor's former address in Pennsylvania and forwarded by the Postal Service to the debtor's new address in New York. The

*Bates* court upheld venue in the Western District of New York despite defendant's contention that it did not deliberately direct the notice to plaintiff in that district. The court stated: "The statutory standard for venue focuses not on whether a defendant has made a deliberate contact – a factor relevant in the analysis of personal jurisdiction – but on the location where events occurred." *Id*. at 868 (footnote omitted). It observed that "receipt of a collection notice is a substantial part of the events giving rise to a claim under the Fair Debt Collection Practices Act," and that the harm of abusive debt practices "does not occur until receipt of the collection notice." *Id.* Based on this reasoning, the *Bates* court concluded that a substantial part of the events giving rise to the claim occurred in the Western District. *See also Sacody Techs., Inc. v. Avant, Inc.*, 862 F.Supp. 1152, 1157 (S.D.N.Y. 1994) ("The standard set forth in § 1391(a)(2) may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action.") (cited *in U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping*, 241 F.3d 135, 153-54 (2d Cir. 2001)). The *Bates* court added that its conclusion was supported by the relevant factors identified by the Supreme Court in *Leroy v. Great Western United Corp.*, 443 U.S. 173, 184-85 (1979), such as the protection of defendants against an unfair or inconvenient trial location, the location of evidence and witnesses, and the familiarity of the federal court with the applicable law. *Bates*, 980 F.2d at 868.

Here, a similar analysis applies. Dr. Lee's conduct in taking the sample and sending it for analysis, and his receipt of the pathology report and subsequent treatment of plaintiff in reliance thereon, all occurred in New York. Further, the worsening of plaintiff's condition and the subsequent more invasive treatment allegedly resulting from defendants' negligent conduct also occurred in New York. The alleged harm to plaintiff did not occur until Dr. Lee received and

relied on the report in treating plaintiff.  If the report had never been received by Dr. Lee or if Dr. Lee had not relied upon it, any error therein could not have harmed plaintiff.  Although defendants prepared and sent the pathology report from Georgia, they did so in order that it would be received and relied upon by the physician who sent the sample.  It is not necessary that defendants specifically knew or intended that this particular report would be sent to New York; under *Bates*, venue depends not a deliberate contact but on the location where events occurred.  Thus, on the undisputed facts, a substantial part of the alleged events or omissions giving rise to the claim occurred in the Northern District of New York, and there is a direct connection between the events in New York and plaintiff's claim.  As for the *Leroy* factors, the same considerations supporting long-arm jurisdiction over defendants support the conclusion that venue here is not unfair; all of plaintiff's medical evidence and witnesses are here; and this Court is "at home" with New York law, which, as discussed below, governs this action.  Defendants' motion to dismiss or transfer on the ground of improper venue is denied.

### CHOICE OF LAW

Defendants argue that dismissal is required by the substantive law of the State of Georgia. Even accepting defendants' characterization of the Georgia law on which it relies as "substantive," dismissal is not warranted because, as briefly discussed below, New York law applies to all substantive issues in this action.

In this diversity action, New York choice of law principles govern.  *See Finance One Public Co. Ltd. v. Lehman Bros. Special Fin. Inc.*, 414 F.3d 325, 331 (2d Cir. 2005).  In tort cases, under traditional New York choice of law principles, "the law of the place of the wrong governs all substantive issues in the action."  *Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189, 195

-14-

(1985).  Where "defendant's negligent conduct occurs in one jurisdiction and the plaintiff's

injuries are suffered in another, the place of the wrong [for choice-of-law purposes] is considered

to be the place where the last event necessary to make the actor liable occurred."  *Id*.  Thus, in tort

cases, the place of the wrong is ordinarily the place where plaintiff's injury occurred, and that

forum's law is usually applied.  *See, e.g., Hunter v. Derby Foods, Inc*., 110 F.2d 970, 972 (2d

Cir.1940); *Carroll v. LeBoeuf, Lamb, Green & MacRae, L.L.P.*, 392 F.Supp.2d 621, 629

(S.D.N.Y. 2005); *Giacomello v. J.C. Penney Co., Inc*., 175 F.Supp.2d 568, 571 (S.D.N.Y. 2001);

*Kramer v. Showa Denko K.K.*, 929 F.Supp. 733, 741 (S.D.N.Y. 1996); *see also Sack v. Low*, 478

F.2d 360, 365 (2d Cir. 1973) ("The traditional view has been that a cause of action for tort arises

when and where the last event necessary to make an actor liable ... takes place.  Since a tort action

traditionally has not been viewed as complete until the plaintiff suffers injury or loss, the cause of

action has been considered to arise at the place where this damage was sustained." (citation and

internal quotes omitted)).  This general rule is not, however, applied "blindly"; rather, where

another jurisdiction has the greater interest in the application of its law, its law will apply.  *See,

e.g., Amusement Ind., Inc. v. Stern*, 693 F.Supp.2d 327, 341 (S.D.N.Y. 2010) (finding that,

although the plaintiffs felt economic harm in California, New York law should apply because

New York was the "overwhelming center of the events giving rise to the case, and ... has a strong

interest in regulating the conduct performed within its borders"); *LaSala v. Bank of Cyprus Pub.

Co.*, 510 F.Supp.2d 246, 265-56 (S.D.N.Y. 2007) (applying the law of Cyprus because the

operative events took place almost exclusively in Cyprus and the contacts with Cyprus directly

implicate its significant governmental interests).

       In the case at bar, the last events necessary for liability – *i.e.*, plaintiff's worsening

condition and additional medical treatment allegedly resulting from Dr. Lee's treatment in reliance on the pathology report – occurred in New York. Thus, New York is the place of the wrong. New York has the most contacts with the events underlying the claim and has a strong interest in the health of its residents. Defendants have not presented any reason why Georgia would have an overriding interest in the application of its law, and the Court perceives no ground to deviate from the general rule. Accordingly, New York substantive law applies, and the motion to dismiss based on Georgia law is denied.

### CONCLUSION

It is therefore

ORDERED that defendants' motion (Dkt. No. 7) is denied in all respects; and it is further

ORDERED that the denial of dismissal under Fed. R. Civ. P. 12(b)(2) is based on the finding that plaintiff has made a *prima facie* showing of personal jurisdiction over defendants, and is without prejudice to a motion by plaintiff to dismiss the affirmative defense of lack of personal jurisdiction and/or a motion by defendants to dismiss the action for lack of jurisdiction, provided that the motion is made within 90 days in accordance with this Memorandum-Decision and Order; and if no motion is made, the Court will determine the jurisdictional issue at trial.

IT IS SO ORDERED.

Date:   August 31, 2011
        Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge

-16-